[Cite as *In re J.G.*, 2014-Ohio-4118.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.G. aka T., P.H.

Court of Appeals No.  L-14-1109

Trial Court No.  12225996

**DECISION AND JUDGMENT**

Decided:  September 19, 2014

* * * * *

Tima A. Dugan, for appellant.

Dianne L. Keeler, for appellee.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} Appellant, S.G., appeals the judgment of the Lucas County Court of

Common Pleas, Juvenile Division, terminating her parental rights and awarding

permanent custody of her daughter, J.G. (also known as J.T.), and son, P.H., to appellee,

Lucas County Children Services (LCCS).  For the following reasons, we affirm.

## A. Facts and Procedural Background

{¶ 2} This case involves the termination of parental rights. On August 10, 2012, LCCS filed a complaint in the juvenile court alleging dependency and neglect. The complaint stemmed from a referral LCCS received one week earlier that alleged that appellant was overheard at a doctor's office telling P.H., who was approximately 19 months old at the time, that she would "beat the fuck out of him," and to "fuck off." Further, the referral indicated that appellant picked P.H. up by the back of his shirt and allowed him to fall to the floor. Appellant then proceeded to pull P.H. by the feet as his head dragged on the ground. In addition to the referral, LCCS received a police report that indicated that appellant would be charged with endangering children as a result of the incident at the doctor's office. The police report indicated that appellant had become upset with J.G. and was overheard telling her, "If I get kicked out I'm gonna beat the fuck out of you every time I look at you."

{¶ 3} On September 24, 2012, LCCS amended its complaint to reflect its discovery of further acts of violence committed by appellant. A hearing was subsequently held on the complaint. At the hearing, appellant admitted the allegations contained in the original complaint. Consequently, the children were found to be dependent and neglected, and, on October 31, 2012, the juvenile court awarded temporary custody to LCCS. At the same time, the juvenile court approved LCCS's case

2.

plan services with the ultimate goal of reunification. The services that were to be provided as part of the case plan included parent-child interaction therapy (PCIT), anger management classes, and counseling.

{¶ 4} Eleven months later, appellant was indicted on charges of felonious assault and domestic violence. She ultimately entered a plea of no contest and was found guilty of domestic violence against her son, M.L.[1] As part of her sentence, appellant was ordered to have no contact with M.L. She subsequently violated the no-contact order, and was found to be in violation of the terms of her community control. As a result of her violation, she was ordered to serve 30 days in jail.

{¶ 5} While appellant was serving her jail sentence, LCCS initiated permanent custody proceedings, filing its motion for permanent custody with the juvenile court on November 25, 2013. A hearing on the motion took place over three days (February 21, March 25, and April 4, 2014).

{¶ 6} At the hearing, LCCS solicited the testimony of the clinical therapist who oversaw appellant's PCIT program, Allison Arnekrans. Arnekrans explained that PCIT is a two-part program that lasts between 12 and 20 weeks. The first part seeks to rebuild the relationship between the parent and children. Part two assists the parent in implementing an effective discipline system. PCIT uses a strict time-out discipline system in place of physical discipline. During part two of the program, Arnekrans

---

[1] Appellant has a total of six children. LCCS's motion to terminate parental rights in this case relates only to J.G. and P.H.

3.

discussed discipline with appellant and appellant indicated that she was not comfortable using a time-out system. Instead, appellant indicated her desire to use a physical discipline system. Towards the end of PCIT, appellant told Arnekrans that she would "try" to implement the time-out protocol, but "didn't know if she could implement them right away."

{¶ 7} The state also called the clinical therapist, Reka Monus, who administered appellant's 12-week anger management program during the summer of 2013. Monus testified that appellant completed the program. Nonetheless, Monus indicated that appellant maintained that she did not have a problem with anger. Due to appellant's reluctance to recognize her anger problem, Monus opined that appellant was unlikely to change her behavior.

{¶ 8} Next, the state called Renee Lewis, the caseworker that worked on appellant's case in connection with two prior referrals to LCCS. The first referral was made on February 4, 2014, in relation to a physical altercation that took place between appellant and her 13-year-old daughter, M.N. at the end of January. The Toledo Police Department was notified of a domestic violence disturbance in connection with the incident. The second referral occurred on February 10, 2014. The second referral stemmed from an incident in which appellant accidentally hit her son, J.T., in the face with a shovel. An altercation ensued, and appellant brandished a knife. Appellant denied any physical violence against M.N. or J.T. in her discussions with Lewis. However,

4.

Lewis ultimately concluded that J.T. was physically abused by appellant. Moreover, during the course of Lewis' investigation, she learned that appellant was communicating with M.L., in violation of the juvenile court's no-contact order.

{¶ 9} After receiving testimony from Lewis, LCCS called Sheila Funches. Funches was the caseworker assigned to this case. She testified that the case plan services offered in this case included anger management classes, parental counseling, PCIT, continued counseling, and visitation. Funches stated that, despite appellant's completion of some of the case plan services, her "demonstration of those skills learned have not been applied to her children or the case." Funches opined that appellant "has not dealt with the issues at hand in regards to her anger and how to handle things appropriately." She supported her position by noting appellant's involvement in three incidents involving domestic violence that occurred after appellant's completion of case plan services. One of the incidents left a child bruised and another incident left a child cut by a knife that appellant had wielded. According to Funches, appellant would not take responsibility for her prior acts of aggression and violence, opting instead to plead self-defense, accident, or deny the allegations altogether.

{¶ 10} Funches went on to indicate that J.G. and P.H. had been in the care and custody of LCCS since mid-2012. Thus, they were in LCCS custody for more than 12 months at the time of the hearing. She testified that J.G. and P.H. were living in an agency-approved foster home where they were doing very well and bonding to their caregiver.

5.

{¶ 11} As its last witness, LCCS called the children's guardian ad litem, Sharon Fitzgerald. In her report to the juvenile court, Fitzgerald recommended an award of permanent custody to LCCS. When asked why she recommended an award of permanent custody, Fitzgerald testified:

Well, first of all, we're really close to the two-year mark at this point which means that mom and the two dads have had 18 months to fix the problems that brought the children in. Initially, the issues were not that great. There were some behavioral problems from the children, but then mom had dragged one of her children and she still says alleged, and I am concerned about that because there was a tape played and there was a finding at the adjudication. So mom's still back with alleged. But anyway, her behavior that was physically harmful to her infant son or toddler son [sic]. But most of the interactions were not that awful.

And then [J.G.] got into foster care and the interactions of mom exacerbated a lot of her behavior for awhile. And then mom's behaviors became for a period of time, kind of erratic.

* * *

But we've gotten to the point now where she has gotten into some serious altercations with three of her six children and a couple of them were either injured or they injured her or could have gotten much worse.

And she didn't seem to learn from that that she needs to stay away from these kids or she needs to engage their caregivers in some serious conversations about the kids' behaviors or she needs to set up appointments for her children. None of that apparently has been done. So I don't know how much she's learned from her various parenting class[es] or whatever because here we are and she's sitting in the jumpsuit and is still not saying, yes, I see the light, I need to do something about my older children so that my younger children don't get involved in all this drama and violence.

{¶ 12} In her case-in-chief, appellant called her mother, Brenda Phillips, and her mother-in-law, Lue Wilson. Additionally, appellant took the stand on her own behalf. During Phillips' testimony, she testified that she had not witnessed any incidents concerning appellant's interaction with the children that would give her cause for concern about the children's safety. Rather, Phillips testified that appellant has a "good" relationship with the children. However, Phillips did acknowledge that appellant has problems controlling her anger, and referenced the incident in which appellant pulled a knife on M.L. and threatened him with it, after which time M.L. allegedly cut himself trying to free the knife from appellant. Notably, Phillips stated that appellant "sometimes" spits on her children when she is angry with them.

7.

{¶ 13} Phillips' testimony was echoed by Wilson when she was called upon to testify. She opined that appellant is a "good, loving mother to the kids. They loved her. They really loved her. She was always good to them." She went on to indicate that she had never seen appellant act violently.

{¶ 14} Finally, appellant testified that she is a changed person after PCIT. However, she indicated that the changes are "going to take some time. It's not going to work overnight. I didn't get like this in one day." When asked about the incident in which M.L. was cut by a knife, appellant reiterated Phillips' testimony that M.L. pulled the knife on her, she grabbed it from him, and he cut himself trying to grab it back from her.

{¶ 15} Upon the presentation of the foregoing evidence, the juvenile court found that the children could not be placed with their parents within a reasonable period of time or should not be placed with their parents, as set forth in R.C. 2151.414(B)(1)(a). Moreover, the court found, pursuant to R.C. 2151.414(B)(1)(d), that the children had been in the custody of LCCS for more than 12 months out of a 22-month period. In addition, the court examined the factors contained in R.C. 2151.414(D)(1) and found that the children's best interests would be served by a grant of LCCS's motion for permanent custody. Thus, the court granted LCCS's motion. Appellant's timely appeal followed.[2]

---

[2] The fathers of J.G. and P.H. have not appealed the trial court's grant of LCCS's motion for permanent custody.

8.

## B. Assignments of Error

{¶ 16} On appeal, appellant assigns the following errors for our review:

1) Appellee failed to prove by clear and convincing evidence that the children could not be returned to Appellant within a reasonable time and that permanent custody was in the best interests of the children.

2) Appellee failed to prove by clear and convincing evidence that they used reasonable efforts to prevent the continued removal of the children from the home.

## II. Analysis

{¶ 17} In *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the United States Supreme Court noted that parents' interest in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court." The protection of the family unit has always been a vital concern of the courts. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

{¶ 18} Ohio courts have long held that "parents who are 'suitable' persons have a 'paramount' right to the custody of their minor children." *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

9.

{¶ 19} Thus, a finding of inadequate parental care, supported by clear and convincing evidence, is a necessary predicate to terminating parental rights. "Before any court may consider whether a child's best interests may be served by permanent removal from his or her family, there must be first a demonstration that the parents are 'unfit.'" *In re Stacey S.*, 136 Ohio App.3d 503, 516, 737 N.E.2d 92 (6th Dist.1999), citing *Quillon v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). Parental unfitness is demonstrated by evidence sufficient to support findings pursuant to R.C. 2151.414. *See In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996), syllabus.

{¶ 20} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things: (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(d) apply, and (2) that permanent custody is in the best interests of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. It is more than a preponderance of the evidence, but does not require proof beyond a reasonable doubt. *Id.*

{¶ 21} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Nos.

10.

03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

### A. Grant of Permanent Custody

{¶ 22} In her first assignment of error, appellant argues that the juvenile court erred in granting LCCS's motion for permanent custody. In particular, appellant contends that the evidence does not support the trial court's determination that permanent custody was in the children's best interests. We disagree.

{¶ 23} We note at the outset that appellant does not challenge the juvenile court's determination that the children were in LCCS's custody for 12 or more months of a consecutive 22-month period as set forth in R.C. 2151.414(B)(1)(d). Additionally, the trial court found that the children could not be placed with their parents within a reasonable time or should not be placed with their parents under R.C. 2151.414(B)(1)(a). In so doing, the court examined the factors enumerated in R.C. 2151.414(E). The court concluded that several factors applied, including R.C. 2151.414(E)(1), (4), (6), and (13). Those sections provide:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321,

2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code, and the child or a sibling of the child was a victim of the offense, or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

* * *

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

**{¶ 24}** Relevant to (E)(1) and (4), the juvenile court stated that, although appellant completed her case plan services, "[s]he failed to acknowledge the seriousness of the events that brought the complaint into court and demonstrated by events occurring after completion of these services that she could not be counted on to interact safely with her children." As already indicated above, the record in this case demonstrates that appellant has carried out multiple acts of violence against her children since LCCS first became involved with J.G. and P.H. Despite receiving, among other services, anger management classes and PCIT, appellant insists on utilizing physical discipline accompanied by the use of extreme profanity and verbal threats. Specifically troubling is the fact that appellant has been involved in more than one incident in which she has wielded a knife against her children.

13.

**{¶ 25}** As to (E)(6) and (13), we note that appellant was arrested in September 2013 on charges of felonious assault and domestic violence. She was subsequently incarcerated for two months during which time she was unable to visit with the children or participate in case plan services. Appellant eventually entered a plea of no contest to the domestic violence charge. She was placed on community control, but violated her terms by communicating with M.L. in violation of a no-contact order. Consequently, she was sent back to jail for 30 days.

**{¶ 26}** Upon examination of the relevant factors contained in R.C. 2151.414(E), we find the juvenile court's conclusion that the children could not be placed with their parents within a reasonable time or should not be placed with their parents under R.C. 2151.414(B)(1)(a) was supported by clear and convincing evidence and was not against the manifest weight of the evidence.

**{¶ 27}** Having concluded that the trial court properly found that R.C. 2151.414(B)(1)(a) and (d) were satisfied in this case, we now turn to an examination of the trial court's findings with respect to the children's best interests.

**{¶ 28}** In order to determine the best interests of the child, we follow the framework outlined in R.C. 2151.414(D)(1). That section provides:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division

14.

(A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 29}** In its judgment entry granting LCCS's motion for permanent custody, the juvenile court analyzed the relevant factors and concluded that the grant of permanent custody was in the children's best interests. We agree.

**{¶ 30}** As to the first factor, Funches testified that J.G. and P.H. are currently living in an agency-approved foster home where they are doing very well and bonding to their caregiver.

**{¶ 31}** Next, the trial court found that R.C. 2151.414(D)(1)(c) weighed in favor of permanent custody. Appellant does not contest the fact that the children were in LCCS custody for more than 12 consecutive months at the time the motion for permanent custody was filed. Indeed, LCCS obtained custody of the children on August 10, 2012. The motion for permanent custody was not filed until November 25, 2013. Under R.C. 2151.414(B)(1)(d), the children would be considered to have entered LCCS custody no later than October 10, 2012. Thus, the children were in LCCS custody for at least 13 months at the time the motion for permanent custody was filed.

**{¶ 32}** Concerning R.C. 2151.414(D)(1)(d), the trial court specifically found that "a legally secure placement cannot be achieved except by awarding permanent custody to the L.C.C.S." Concerning the placement of the children with appellant, we note that the

16.

record is rife with incidents in which appellant has engaged in acts of physical violence against her children, including dragging P.H. by the ankles after picking him up and dropping him to the ground.

{¶ 33} Regarding the wishes of the children under R.C. 2151.414(D)(1)(b), the juvenile court noted that J.G. expressed her desire to be returned to her mother. However, in light of the evidence presented at the hearing involving appellant's repeated acts of physical aggression toward her children, we find no error in the juvenile court reaching a conclusion contrary to J.G.'s wishes.

{¶ 34} Having thoroughly reviewed the record before us in light of the factors set forth in R.C. 2151.414(D)(1), we conclude that the trial court's determination that permanent custody was in the children's best interests was supported by clear and convincing evidence. Because we also find that the trial court's findings under R.C. 2151.414(B)(1) were supported by clear and convincing evidence, the trial court's decision to grant LCCS's motion for permanent custody was not against the manifest weight of the evidence.

{¶ 35} Accordingly, appellant's first assignment of error is not well-taken.

### B. Reasonable Efforts

{¶ 36} In her second assignment of error, appellant argues that LCCS failed to use reasonable efforts to prevent the removal of the children, as required under R.C. 2151.419(A)(1).

17.

**{¶ 37}** "When the state intervenes to protect a child's health or safety, '[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called "reasonable efforts.""" *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28, quoting Will L. Crossley, *Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation*, 12 B.U.Pub.Int.L.J. 259, 260 (2003).

**{¶ 38}** While no single section of Ohio's child-welfare code addresses "reasonable efforts," numerous provisions require that children, wherever possible, be cared for and protected in a family environment. Separation of a child from his or her parents should only be accomplished when necessary for the child's welfare or the public safety. *Id.* at ¶ 29. To this end, various statutes require a children's services agency to make "reasonable efforts" to prevent a child's removal from the home or, alternatively, speedy reunification with his or her parents if removal is necessary. *Id.* at ¶ 29-30; Ohio Adm.Code 5101:2-39-05; Juv.R. 27(B)(1).

**{¶ 39}** Notably, the Supreme Court of Ohio has considered the agency's "reasonable efforts" obligation under R.C. 2151.419 in the context of a motion for permanent custody brought pursuant to R.C. 2151.413, and has stated the following:

> [W]e hold that R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413. However, except for some narrowly defined statutory exceptions, the state must still

18.

make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights. If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time. *In re C.F.* at ¶ 43.

**{¶ 40}** Here, appellant contends that "LCCS offered extremely limited services to Appellant in order to help her unify with J.G. and P.H." However, our review of the record reveals that LCCS engaged appellant in a variety of services in an effort to reunify her with her children, including PCIT, anger management classes, visitation services, and counseling. Thus, the record establishes that LCCS caseworkers and other professionals made every effort to treat appellant's issues and reunify her with her children. Despite such efforts, appellant failed to adequately resolve the anger issues that gave rise to the removal of the children. Her failure to address her issues is evidenced by the fact that she has engaged in multiple acts of physical violence against her children since completing her case plan services.

**{¶ 41}** In light of the foregoing, we conclude that LCCS has proven, by clear and convincing evidence, that it employed reasonable efforts to reunify appellant with J.G. and P.H. Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

**{¶ 42}** Based on the foregoing, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs are hereby assessed to appellant in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                             JUDGE

Thomas J. Osowik, J.

Stephen A. Yarbrough, P.J.             _____
CONCUR.                                                   JUDGE

_____
                                               JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.